**COUNTY OF VERNON, Town of Stark, Town of Whitestown, Village of LaFarge, and Martha Driscoll, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, United States Army Corps of Engineers, Robert W. Page, Assistant Secretary of the Army, and Roger Baldwin, Colonel, District Engineer, Defendants–Appellees.**

No. 90–3184.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 22, 1991.

Decided May 24, 1991.

the following reasons, we affirm the judgment of the district court.

## I

## BACKGROUND

The Flood Control Act of 1962, Pub.L. 87–874, 76 Stat. 1173, authorized the Corps to proceed with the Project on the Kickapoo River, Wisconsin. Pursuant to this authorization, the Corps developed a plan that would provide flood control and recreational benefits to the area. The estimated cost of the Project approximated $15,570,-000. Between 1968 and 1971, the Corps acquired several thousand acres in Vernon County, Wisconsin, for the Project. Physical construction of the dam began in 1971 and continued until 1975, when the governor and congressional representatives for the State of Wisconsin withdrew their support for the Project. At least in part because of this change in political climate, the Corps ceased construction on the Project and recommended to Congress that the Project not receive additional funding.

Congress has not appropriated funds for further construction since fiscal year 1977. In that year, the Presidential Review of Water Resource Projects also issued a recommendation that the Project not be further funded. In 1983, however, Congress did appropriate funds for a special report on the status of the Project. This report, presented to Congress in 1984, concluded that the Project lacked economic justification. Despite opposition from several local municipalities, Congress subsequently enacted legislation allowing for the eventual deauthorization of the Project.

The County brought an action that sought declaratory and injunctive relief in an attempt to compel completion of the Project. The district court denied the Corps' motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief could be granted, holding that the County would have a cognizable claim if it could prove that the Corps had failed to complete the Project despite receiving congressional funding. The court later granted the Corps' motion

Jeffrey Knickmeier, Stoughton, Wis., for plaintiffs-appellants.

Mark A. Cameli, Christa A. Reisterer, Asst. U.S. Attys., Madison, Wis., for defendants-appellees.

Before CUMMINGS, RIPPLE and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

The County of Vernon and its co-plaintiffs (the County) brought an action against the United States Army Corps of Engineers (the Corps) to compel completion of the LaFarge Dam Project (the Project). Because no funding existed to complete the Project and because various actions undertaken by the Corps were beyond the court's jurisdiction, the district court granted the Corps' motion for summary judgment. For

for summary judgment after the court determined that it was undisputed that Congress had failed to appropriate funds for construction of the Project since 1977. Further, the district court concluded that actions challenged by the County as arbitrary and capricious were beyond the court's jurisdiction.

## II

## ANALYSIS

We review *de novo* the entry of summary judgment by the district court. *See Renovitch v. Kaufman*, 905 F.2d 1040, 1044 (7th Cir.1990). Summary judgment should be granted only if there remains no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). To preclude summary judgment, the non-moving party must show that a genuine issue exists over a material fact. It "may not rest upon mere allegation or denials of [its] pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *see also Renovitch*, 905 F.2d at 1045. A genuine issue of material fact exists only when there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *See Wolf v. City of Fitchburg*, 870 F.2d 1327, 1329 (7th Cir.1989).

The County argues that the trial court incorrectly concluded that no material factual dispute existed between the parties. Instead, the County contends that a factual question remains: whether the Corps had sufficient funding to complete the Project. The County asserts that the trial court mistakenly relied upon the Corps' vague and unsupported assurances that no funds existed and ignored the Corps' documentation that demonstrates the ready availability of funds. The Corps counters that nothing in the record indicates that funds have ever been appropriated for completion of the Project.

In its complaint, the County alleged that the Corps had failed to complete the Project—a nondiscretionary duty for which funding was available. In granting summary judgment, however, the district court found it undisputed that Congress had failed to appropriate funds for completion of the Project. The record fully supports the district court's conclusion. As the district court noted, the affidavit of Mr. Kursu, the Corps' Chief of Program Management for the St. Paul District, explicitly stated that no funding has been appropriated for the Project since 1977. Mr. Kursu also indicated that Congress has never appropriated sufficient funding to complete the Project.[1]

The County does not challenge directly the accuracy of Mr. Kursu's statements. Instead, the County merely repeats the assertion contained in its complaint that the Project possessed "sufficient funds available for completion." To support this contention, the County points to the Corps' own documents as allegedly demonstrating the availability of funds. These documents, however, do not suggest that Congress has appropriated funds for completion of the Project. Rather, they demonstrate that congressional appropriations fell short of the dollar amount listed in the original program authorization. This will not preclude the grant of summary judgment.

The Flood Control Act of 1962 created an account from which the Corps could draw

---

1. Mr. Kursu's affidavit states in pertinent part:
   5. Although Congress appropriated $550,-000.00 in fiscal year 1983 for the purpose of conducting a study of the economic and engineering feasibility of a modified project, no funds for new construction on the LaFarge Lake and Channel Improvement Project have been appropriated since fiscal year 1977.
   6. No funds are currently available for new construction on the LaFarge Lake and Channel Improvement Project.

7. The Corps of Engineers has at no time had sufficient appropriations to complete the La Farge Lake and Channel Improvement Project.
   8. The La Farge Project is currently in a standby status and the St. Paul District is maintaining the status quo of project lands with operation and maintenance funds.
   R.17.

funds should Congress decide to appropriate funding. *See Environmental Defense Fund v. Froehlke*, 473 F.2d 346, 353–55 (8th Cir.1972). Legislation authorizing a Project does not constitute an appropriation of public monies, but rather contemplates future action by Congress to provide funding. 37 Comp.Gen. 306 (1955). Therefore, the Corps could not continue with construction on the Project absent continuing appropriations from Congress. Regardless of the amount specified in the program authorization, Congress has not appropriated sufficient funds to complete the Project. Thus, we agree that the lack of funding precluded the Corps from completing the Project.

■ The decision of Congress not to appropriate funds for a particular Project normally is not reviewable by the judiciary. *See, e.g., Oklahoma ex rel. Phillips v. Guy F. Atkinson Co.*, 313 U.S. 508, 527, 61 S.Ct. 1050, 1060, 85 L.Ed. 1487 (decisions whether to fund particular projects "raise not constitutional issues but questions of policy. [Such questions] relate to the wisdom, need, and effectiveness of a particular project. They are therefore questions for the Congress, not the courts."). In an attempt to secure such review, the County challenges the accuracy of the cost-benefit analysis contained in the Corps' 1984 report to Congress that recommended deauthorization of the Project. This report, argues the County, constituted final agency action subject to judicial review under the Administrative Procedure Act. *See* 5 U.S.C. § 704. The County alleges that, if the Corps had employed proper calculations, a cost-benefit ratio sufficient to prompt congressional funding would have resulted.

■ The district court, relying on *Izaak Walton League v. Marsh*, 655 F.2d 346

(D.C.Cir.), *cert. denied*, 454 U.S. 1092, 102 S.Ct. 657, 70 L.Ed.2d 630 (1981), concluded that it lacked authority to review the 1984 report. We agree. In *Izaak Walton*, the District of Columbia Circuit held that pre-authorization reports prepared for the benefit of Congress are not subject to judicial review. As the court noted, "[i]t has consistently been held that the determination of economic costs and benefits is a matter of legislative judgment and that, since the analyses are performed for Congress, the Legislative Branch, rather than the Judiciary, is best suited to review their adequacy." *Id.* at 358.

The County, however, attempts to distinguish *Izaak Walton* by arguing that it immunized only pre-authorization reports, not post-authorization reports, from judicial review. Indeed, the *Izaak Walton* court noted that "the Corps' decision to implement an authorized project should be subject to review, since it is a final agency decision." *Id.* at 361. Because the Corps often uses post-authorization cost-benefit studies to determine which Projects it should implement, the County contends that post-authorization reports constitute final agency action.

We cannot accept this argument. Congress specifically requested the Corps to prepare a report to facilitate Congress' decision-making role. Under the circumstances of this case, we see no reason to distinguish between the Corps' post-authorization report and the pre-authorization report at issue in *Izaak Walton*. Whatever the propriety of reviewing internal reports prepared on the Corps' own initiative as part of the implementation process,[2] judicial review is inappropriate when Congress specifically has requested a study to facilitate a funding determination. "Congress will itself review the analysis and

---

**2.** The County argues that such a distinction was recognized in *Concerned Residents of Buck Hill Falls v. Grant*, 537 F.2d 29 (3d Cir.1976), where the court held that a cost-benefit report prepared by the Soil Conservation Service was subject to judicial review. But the Third Circuit reviewed the report not because it was prepared after the project was authorized, but because under the statutory scheme at issue there, Congress made general appropriations without consideration of the underlying merits of individual projects. Thus, Congress did not rely upon the

cost-benefit reports of individual projects in making appropriation decisions; the court distinguished cases arising under the Flood Control Act, where "the individual projects [are] specifically authorized by Congress after consideration of their economic merits. PL 566, in contrast, does not provide for individual project authorization and no such authorization has been passed." *Id.* at 35. Therefore, *Concerned Residents* provides little guidance to those cases arising under statutory frameworks that require

determine whether it has been conducted properly. Once it has been made, the courts should not interfere." *Id.* at 358 (collecting cases); *see generally Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council,* 435 U.S. 519, 558, 98 S.Ct. 1197, 1219, 55 L.Ed.2d 460 (1978) ("The fundamental policy questions appropriately resolved in Congress and in the state legislatures are not subject to reexamination in the federal courts under the guise of judicial review of agency action."). Thus, the district court correctly refused to review a report that Congress requested and funded for its own use.[3]

 Finally, the County argues that the Corps improperly expanded the size of the Project by acquiring land without authorization. We find this argument unpersuasive. When an agency develops a good faith plan in response to authorization, the scope of acquisition is not subject to review. *See Lower Brule Sioux Tribe v. United States,* 712 F.2d 349, 354–55 (8th Cir.1983). There is no indication from the record that the Corps' acquisition plan was developed as anything other than a good faith plan of implementation. Accordingly, the scope of acquisition is not subject to judicial review.

### Conclusion

For the reasons stated above, the judgment of the district court is affirmed.

AFFIRMED.

Congress to make appropriation decisions on individual projects.

Neither party relies on *Environmental Defense Fund v. Marsh,* 651 F.2d 983 (5th Cir.1981). We agree that this case is not helpful to the resolution of the issues before us. In *Environmental Defense Fund,* the court dealt with action taken by the Corps *prior* to a congressional funding decision. Indeed, the court acknowledged that congressional action taken after consideration of a Corps recommendation is, under the rule articulated in *Izaak Walton,* not reviewable by the courts. *See id.* at 1004 n. 27 ("congressional action based upon a specific [cost-benefit report] forecloses judicial review of that [cost-benefit report]."). Moreover, *Environmental De-*

*fense Fund* relied on a particular statutory mandate governing the Corps' use of interest rates in cost-benefit reports. *See id.* n. 29. That statutory provision is not at issue here.

3. Similarly, we reject the assertion that the district court should have reviewed other actions by the Corps that culminated in the recommendation of deauthorization. Although these actions are challenged by the County as "contrary to applicable law and rules of procedure," Appellant's Br. at 25, the statutory requirements regulating the process of deauthorization are hardly onerous. *See* 33 U.S.C. § 579. Nothing in the record indicates that the Corps has failed to comply with applicable procedures.