Anthony JONES, Plaintiff,

v.

Officer BANKS et al., Defendants.

No. 92 C 8335.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 13, 1995.

Anthony Jones, pro se.

Susan Takata O'Leary, Illinois Dept. of Corrections, Michael Brucekatten, Illinois Atty. General's Office, Chicago, IL, for defendants.

### MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiff Anthony Jones (Jones), an inmate in the custody of the Illinois Department of Corrections, brings this *pro se* § 1983 action against defendant Charles Banks (Banks), a correctional officer stationed at the Stateville Correctional Center. Jones seeks damages and injunctive relief for alleged violations of his Eighth and Fourteenth Amendment rights. Before this court are cross-motions for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. For the following reasons, defendant's motion for summary judgment is granted in part and denied in part. Plaintiff's motion is denied.

### FACTS

Jones is serving an 80–year sentence for murder and aggravated battery. On Decem-

ber 15, 1992, the day the events in question occurred, Jones was an inmate at the Stateville Correctional Center. He resided in H–House, a protective custody cellblock.

Banks was a correctional officer at Stateville. He was responsible for maintaining custody and control of the inmates and ensuring that they received prison services. He was on duty in H–House during the day on December 15; he had been assigned to H–House a week earlier.

Correctional officers monitor H–House from a control center: a booth enclosed in bulletproof glass from which they can electronically open the door of any cell on the block. On December 15, 1992, Banks was in the control booth, opening and closing cell doors so that inmates could go take showers.

From there the parties' stories diverge. Jones says he gave Banks a note as he went to the shower on the morning of December 15, asking Banks not to open Jones' cell door for any reason because inmates were trying to get into the cell to sexually assault him. He also claims that Banks and other correctional officers knew that another inmate, Alonzo Cook, had AIDS and was Jones' enemy. That afternoon, Cook stood outside Jones' cell and asked Banks to open the door so he could "f—— that b—— up." Banks opened the door and Cook charged in, swinging a knife and a small stereo speaker at Jones. Two other inmates restrained Cook.

Banks tells a different story. He claims that as of December 15, 1992, he did not know Jones and had never spoken to Jones.[1] He was not aware that Jones had any enemies in H–House or that he needed protection, nor was he aware that Cook had AIDS. He saw Jones wave his hand out of his cell door and believed that Jones was signaling that he wanted to take a shower. Cook, a cellblock worker, also signaled that Jones wanted to leave his cell. Banks opened the door, and Cook ran inside, waving his hand at Jones. Jones picked up a chair and swung it at Cook. Banks then separated the two.

---

**1.** Jones says he met Banks in July 1992 while housed in the Special Evaluation Unit at Stateville.

Jones' deposition testimony reveals that he had had no problems with Cook before the incident in question. He had never fought with Cook, and Cook had never threatened him before the afternoon of December 15. Jones did not name Cook as an enemy [2] until after the December 15 incident, and he had never told Banks not to open his cell door while Cook was there. Jones admits that he was not injured as a result of Cook's attack; that the speaker "[j]ust skimmed [his] head" and he neither requested nor received medical attention for any injury (Jones Dep. at 7–9, 12, 16–18, 21–22).

Jones' complaint requests injunctive relief and nominal, compensatory, and punitive damages. He names Banks as a defendant in both his individual and official capacities. Banks moved for summary judgment on August 9, 1993, arguing that (a) Jones' claim for injunctive relief was moot because he was no longer at Stateville, and (b) Jones' damages claim failed to state a cause of action because it alleged no injury resulting from Cook's attack. In response, Jones filed a cross-motion for summary judgment. He argued that recovery was possible under § 1983 even though he suffered no injury; that his Eighth Amendment rights were violated because Banks knew or should have known that an attack was imminent and was deliberately indifferent to the risk.

### DISCUSSION

As an initial matter, we agree with Banks that because Jones has been transferred to Joliet while Cook remains at Stateville, Jones' claim for injunctive relief, which asked that he be separated from Cook, is moot. *See Moore v. Thieret,* 862 F.2d 148 (7th Cir.1988). Similarly, we need not delve into Jones' official capacity claims for damages. The Eleventh Amendment bars § 1983 plaintiffs from seeking damages against state officials in their official capacities. *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350–51, 89 L.Ed. 389 (1945); *Meadows v. Indiana,* 854 F.2d 1068 (7th Cir.1988).

Jones' individual capacity damages claims require more detailed analysis. The conduct of prison officials is subject to the constraints of the Eighth Amendment, which prohibits the infliction of "cruel and unusual punishments." U.S. Const.Amend. VIII. The amendment applies to state officials through the due process clause of the Fourteenth Amendment. *Robinson v. California,* 370 U.S. 660, 666, 82 S.Ct. 1417, 1420, 8 L.Ed.2d 758 (1962). It is well established that "punishments" include not only penalties which are a formal part of an inmate's sentence, but also deprivations the inmate suffers during imprisonment. *Estelle v. Gamble,* 429 U.S. 97, 102–03, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). Therefore, an inmate is entitled to invoke the Eighth Amendment to challenge the conditions of his confinement.

*Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991), held that such a challenge can succeed only if it has both an objective component and a subjective component. To satisfy the objective component the inmate must allege at least that he or she was denied "the minimal civilized measure of life's necessities," as defined by reference to " 'the evolving standards of decency that mark the progress of a maturing society.' " *Rhodes v. Chapman,* 452 U.S. 337, 347, 346, 101 S.Ct. 2392, 2399, 2399, 69 L.Ed.2d 59 (1981) (quoting *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958) (plurality opinion)). To satisfy the subjective component the inmate must show that the official had the requisite state of mind. Even the most serious objective harm does not establish an Eighth Amendment violation unless it was driven by some culpable intent; the amendment's use of the word "punishment" necessarily implies a " 'deliberate act intended to chastise or deter.' " *Wilson,* 501 U.S. at 300, 111 S.Ct. at 2325 (quoting *Duckworth v. Franzen,* 780 F.2d 645, 652 (7th Cir.1985), *cert. denied,* 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986)). In *Wilson,* the Court determined that deliberate indifference is the state of mind that should apply to all prison conditions cases. In *Farmer v. Brennan,* —— U.S. ——, 114 S.Ct. 1970, 128

---

**2.** The Department of Corrections permits inmates to designate other inmates as enemies.

Inmates are not housed with named enemies (Defendant's Report to the Court (5/4/94) at 2).

L.Ed.2d 811 (1994), the Court clarified deliberate indifference, holding that

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also [actually] draw that inference.

*Id.* — U.S. at ——, 114 S.Ct. at 1979.

■ Summary judgment is appropriate unless there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *County of Vernon v. United States*, 933 F.2d 532, 534 (7th Cir. 1991). We apply this standard to Jones' claim, evaluating the merit of his case under the deliberate indifference test. To prevail on his motion Banks must show that Jones cannot satisfy the two-prong (objective/subjective) standard set forth in *Wilson*, even if we read all facts and inferences in the light most favorable to Jones, as we must. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ We begin with the Eighth Amendment's objective component. In failure-to-protect cases, there must first be a serious threat to the inmate's well-being. *King v. Fairman*, 997 F.2d 259, 261 (7th Cir.1993) (defining the required objective threat as "serious risks"); *Duana v. Lane*, 959 F.2d 673, 677 (7th Cir.1992) (same). Jones is a known homosexual who describes himself as a "drag queen." He claims (and Banks does not dispute) that he is often in danger from other inmates because they want to have sex with him or injure him (Plf's Cross–Mo. for Sum.Jgmt. at 1). He is in protective custody precisely because there is a risk of attack (Dft's Rep. (5/4/94) at 2–3). Clearly, Jones has produced sufficient evidence of serious risks to his safety to avoid summary judgment based on the objective prong.

■ Jones' claim also satisfies the subjective prong. Although Banks denies that he knew of the risk to Jones (or that he even knew Jones), Jones claims that he had sent many notes to the control explaining the danger and requesting that his door be kept closed (Cplt. at 4–5; Jones Dep. at 12).[3] More importantly, Jones says Cook asked Banks to open Jones' cell door so he could "f—— the b—— up" (Jones Dep. at 16). For Banks to grant such a request—whether or not Jones had warned him ahead of time—would clearly show deliberate indifference to Jones' safety.[4] We have our doubts about the veracity of Jones' account of the events. Would a correctional officer really accede to a request such as Cook's? And how could Jones have heard the request when he was 50 feet away from the control center in a cell from which he had to "loudly scream" if he wanted to attract the guard's attention? (Jones Aff. at 1; Jones Dep. at 17). But these doubts (and Banks' conflicting version of the events) do not affect our conclusion. They merely highlight credibility issues that must be resolved by the trier of fact.

Thus, Jones has raised a genuine issue of material fact as to whether his Eighth Amendment rights were violated. Nonetheless, Banks argues that summary judgment is appropriate because Jones has not produced evidence of any injury that resulted from the alleged violation. Nowhere in his complaint or in his later filings is there even an allegation of any harm he may have suffered. He admitted during his deposition that he was not really injured in the altercation, and he neither requested nor received

---

3. Jones claims in his affidavit that he sent a note specifically to Banks on the morning of December 15 "telling him not to open my cell for anyone or any reason, because inmates be getting the control center officer to open my door so they can sexually assault me" (Jones Aff. at 1). To the extent that this statement conflicts with his earlier deposition testimony that he had never told Banks not to open his cell door if Cook was there, the latter controls. *See Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1297 (7th Cir.1993) (in the absence of a compelling purpose such as presenting newly discovered evidence or clarifying an ambiguity, an affidavit contradicting a prior deposition cannot be used to avoid summary judgment).

4. Of course, if Banks' claim that he thought Jones was waving for his door to be opened is true, it would be a basis for concluding that he was not deliberately indifferent, but that is an issue for the trier of fact.

any medical treatment afterwards (Jones Dep. at 9, 17–18). He alleges no physical injury or emotional distress; all he says is that he seeks punitive, compensatory, and nominal damages for violations of his constitutional rights. Therefore, says Banks, Jones cannot survive summary judgment.

Banks cites *Benson v. Cady,* 761 F.2d 335 (7th Cir.1985), for the proposition that to maintain a § 1983 action a plaintiff must show that he suffered some kind of injury. *Id.* at 339 (requiring § 1983 plaintiff to establish breach of constitutional duty by state actor, causation, and actual damages). We have found language to the same effect in several other Seventh Circuit decisions. *See e.g., Niehus v. Liberio,* 973 F.2d 526, 531–32 (7th Cir.1992) ("There is no tort without an injury, and this is as true of constitutional as of ordinary torts.") (citations omitted); *Lossman v. Pekarske,* 707 F.2d 288, 291 (7th Cir.1983) ("tort damages cannot be awarded if there is no injury").

We do not think that *Benson, Niehus,* and *Lossman* require summary judgment here. Those cases dealt with situations in which plaintiffs sought compensatory damages for violations of their constitutional rights, but presented no evidence of actual injury. We believe that Jones has presented sufficient evidence of his fear and alarm at being attacked to satisfy the actual injury requirement of § 1983. *See Memphis Community School District v. Stachura,* 477 U.S. 299, 307, 106 S.Ct. 2537, 2543, 91 L.Ed.2d 249 (1986) (noting that mental and emotional distress constitute compensable injuries under § 1983). We therefore deny Banks' motion for summary judgment with respect to Jones' claims for damages. Jones' motion for summary judgment is also denied. There remains a genuine issue of material fact as to whether Banks was deliberately indifferent to the risk Jones faced.

## CONCLUSION

Defendant's motion for summary judgment is granted in part and denied in part. Plaintiff's motion is denied.