322

IMAGING FINANCIAL SERVICES, INC.,
d/b/a EKCC, a/k/a Eastman Kodak
Credit Corporation, Plaintiff,

v.

GRAPHIC ARTS SERVICES, INC., an
Illinois corporation, Defendant/Third
Party Plaintiff,

v.

KODAK ELECTRONIC PRINTING SYS-
TEMS, INC., a Delaware corpora-
tion, Third Party Defendant.

No. 95 C 5212.

United States District Court,
N.D. Illinois,
Eastern Division.

March 28, 1997.

Edward D. Shapiro (Much, Shelist, Freed, Denenberg, Ament & Eigler), Chicago, IL, for Imaging Financial Services, Inc.

Terrence J. Benshoof (Kanter & Mattenson, Ltd.), Chicago, IL, for Graphic Arts.

James A. White (Jones, Day, Reavis & Pogue), Chicago, IL, for Kodak Electronic.

## MEMORANDUM OPINION AND ORDER

KEYS, United States Magistrate Judge.

This matter comes before the Court on both Plaintiff's and Third Party Defendant's motions for summary judgment, pursuant to Federal Rule of Civil Procedure 56. For the following reasons, this Court grants both motions for summary judgment.[1]

## BACKGROUND

Plaintiff, Imaging Financial Services, Inc. ("Imaging"), also known as Eastman Kodak Credit Corporation or EKCC, filed this lawsuit against Defendant, Graphic Arts Services, Inc. ("Graphic Arts"), seeking to recover monies allegedly owed under finance contracts entered into between Imaging and Graphic Arts. Graphic Arts then filed a third party action against Eastman Kodak Company for breach of implied and express warranties, but subsequently amended its Third Party Complaint to name Kodak Electronic Printing Systems, Inc. ("Electronic"), as the Third Party Defendant. This Court has diversity jurisdiction.

## FACTS

Imaging is a corporation organized under the laws of Delaware, with its principal place of business in New York. (Plaintiff's Statement of Material Uncontroverted Facts [Imaging 12(M)], ¶ 1.) At all relevant times, Graphic Arts was an Illinois corporation with its registered office and its principal place of business located in Illinois. (Imaging 12(M), ¶ 2.) Electronic, is a corporation organized under the laws of Delaware, with its principal place of business in Massachusetts. (Statement of Material Facts of Third Party Defendant in Support of its Motion for Summary Judgment [Electronic 12(M)], ¶ 2.)

On March 28, 1991, Graphic Arts entered into an Agreement for Purchase of Products and License of Programs ("Purchase Agreement", collectively the three Purchase Agreements will be referred to as ("Purchase Agreements"))[2] to purchase a Kodak Prophecy Color Workstation ("Workstation") from Electronic. (Electronic 12(M), 6.) On or about April 6, 1991, Imaging and Graphic Arts entered into a second agreement, ("Lease 1"), in which Imaging agreed to finance the purchase of, and to lease to Graphic Arts, the Workstation, for a period of forty-two months. (Imaging 12(M), ¶ 5.) Under the terms of this lease, Graphic Arts agreed to pay a total of $131,845.68 payable in thirty-six monthly payments of $3,662.38. (Imaging 12(M), ¶ 6.) The first six months of this lease required no payment by Graphic Arts. (Id.) The Workstation was delivered to Graphic Arts, by Electronic, on April 5, 1991. (Electronic 12(M), ¶ 7.)

On January 22, 1991, Graphic Arts entered into a Purchase Agreement to purchase an Optronics Colorgetter ("Colorgetter") from

---

1. Because Plaintiff's motion was for partial summary judgment (as to Counts I through III) has been granted, the remaining claims (Counts IV through VI) which were alleged in the alternative, are hereby dismissed, as moot. Additionally, the Amended Third Party Complaint is dismissed, with prejudice. Finally, Defendant's pending motions to compel are hereby denied, as moot.

2. The Purchase Agreements are entitled "Agreement for Purchase of Products and License of Programs". The documents themselves make no mention of any form of lease, and specifically refer to the "purchase price". The payment terms under these agreements state "Payment made through [Imaging]." Since UCC Article 2 applies *contracts for* the sale of goods, Article 2 applies to the Purchase Agreements here.

Electronic. (Electronic 12(M), ¶4.) On or about February 12, 1991, Imaging and Graphic Arts entered into an agreement, ("Lease 2"), in which Imaging agreed to finance the purchase of, and to lease to Graphic Arts, the Colorgetter, for a period of sixty months. (Imaging 12(M), ¶7.) Under the terms of this lease, Graphic Arts agreed to pay rent of $86,136.60 in sixty monthly payments of $1,435.61. (Imaging 12(M), ¶8.) Electronic delivered the Colorgetter to Graphic Arts on February 21, 1991. (Electronic 12(M), ¶5.)

On November 22, 1991, Graphic Arts entered into a Purchase agreement to purchase a Kodak Optronics Colorgetter Upgrader Kit ("Upgrader Kit") and HPG Upgrade Option from Electronic. (Electronic 12(M), ¶8.) On or about May 28, 1992, Imaging and Graphic Arts entered into a third agreement, ("Lease 3"), in which Imaging agreed to finance the purchase of, and to lease to Graphic Arts, the Upgrader Kit and HPG Upgrade Option, for a period of thirty-six months. (Imaging 12(M), ¶9.) Under the terms of this third lease, Graphic Arts agreed to pay rent of $35,110.74 in three monthly payments of $557.18 and thirty monthly payments of $1,114.64. (Imaging 12(M), ¶10.) The first three months of this lease required no payments by Graphic Arts. (Id.) Electronic delivered the Upgrader Kit and HPG Upgrade Option to Graphic Arts on May 28, 1992. (Electronic 12(M), ¶9.)

The provisions of Leases 1, 2, and 3 (collectively "the Leases") are identical—only the duration and the amount of the monthly payments vary. The Leases provide that Imaging specifically disclaims any performance warranties to Graphic Arts for any of the leased equipment. (Imaging 12(M), ¶11.) In addition, in the event of a default by Graphic Arts, the Leases authorize Imaging to accelerate the remainder due as a remedy. (Imaging 12(M), ¶12.) The Leases also provide that Graphic Arts will pay a late charge of ten percent for each installment payment which remains overdue for more than thirty days. (Imaging 12(M), ¶14.)

Graphic Arts has failed, and refused, to make any payments under Lease 1 since May 6, 1993.[3] The total due under Lease 1 is $65,922.84. (Imaging 12(M), ¶16.) Further, Graphic Arts has failed to pay late charges, in the amount of $6,594.84, which began to accrue on May 6, 1993. (Imaging 12(M), ¶17.) Graphic Arts has also failed, and refused, to make any payments under Lease 2 since October 12, 1994. The total due under Lease 2 is $24,405.37. (Imaging 12(M), ¶19.) In addition, Graphic Arts has also failed to pay late charges, in the amount of $1,148.48, which began to accrue on October 12, 1994. (Imaging 12(M), ¶20.) Finally, Graphic Arts has also failed, and refused, to make any payments under Lease 3 since October 28, 1994. The total due under Lease 3 is $8,917.12. (Imaging 12(M), ¶22.) As with the other leases, Graphic Arts has also failed to pay late charges, which began to accrue on October 28, 1994 and total $780.22. Imaging 12(M), 23. On or about June 29, 1995, Imaging accelerated the remainder due under the Leases. (Imaging 12(M), ¶13.) As of March 31, 1996, the amount Graphic Arts owed on the Leases, including late fees, totaled $107,768.87; this total does not include interest, costs, or attorneys fees.

### SUMMARY JUDGMENT STANDARD

Under the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material fact, and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting FED. R. CIV. P. 56(c) ) Summary judgment is then appropriate, unless there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *County of Vernon v. United States,* 933 F.2d 532, 534 (7th Cir.1991); *see also Jones v. Banks,* 878 F.Supp. 107, 110 (N.D.Ill.1995).

**3.** Graphic Arts maintains that all of the equipment was defective.

In deciding a motion for summary judgment, the Court must view all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir.1991). However, the Court is "not required to draw every conceivable inference from the record [in favor of the non-movant]—only those inferences that are reasonable." *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991). A party opposing summary judgment must submit evidence of a genuine factual dispute. *Smith v. Shawnee Library Sys.*, 60 F.3d 317, 320 (7th Cir.1995) Moreover, "[c]onclusory allegations by the party opposing the motion cannot defeat the motion." *Id.* Likewise, the non-moving party "does not satisfy burden merely by pointing to self-serving allegations that otherwise are without evidentiary support." *Cliff v. Board of Sch. Comm'rs of Indianapolis, Ind.*, 42 F.3d 403, 408 (7th Cir.1994) (citing *McDonnell v. Cournia*, 990 F.2d 963, 969 (7th Cir.1993)).

### DISCUSSION

### I. *Imaging's Motion for Summary Judgment*

#### A. Choice of Law

■ Initially, the Court must determine which state's law governs the interpretation of the terms of the Leases. The Leases provide that "the Agreement shall be interpreted under the laws of the State of New York." (Imaging 12(M), Exs. B, C, and D, ¶ 21.) Under Illinois conflicts law, an express choice of law provision in a contract is recognized and enforced unless it is " 'dangerous, inconvenient, immoral, [or] contrary to the public policy' of Illinois." *Vencor, Inc. v. Webb.*, 33 F.3d 840, 844 (7th Cir.1994) (quoting *Sarnoff v. American Home Products, Corp.*, 798 F.2d 1075, 1080 (7th Cir. 1986) (quoting *McAllister v. Smith*, 17 Ill. 328, 333 (1856))). Here, there is no apparent reason to override the chosen law of the parties. Thus, New York law controls the interpretation of the terms of the Leases.

#### B. New York Breach of Contract Standard

■ The Court, next, addresses the merits of Imaging's motion. Under New York law, in order to prevail on its claims for breach of contract, Imaging must establish: (1) the existence of a contract; (2) due performance by Imaging; (3) a breach by Graphic Arts; and (4) damages as a result of the breach. *R.H. Damon & Co. Inc. v. Softkey Software Prods., Inc.*, 811 F.Supp. 986, 991 (S.D.N.Y. 1993).

#### 1. *Existence of Contract*

Graphic Arts does not dispute that it entered into the Leases with Imaging. (Graphic Arts 12(N) Statement in Response to Plaintiff's Statement of Material Uncontroverted Facts [Graphic Arts 12(N)], ¶¶ 5, 7, and 9.) Nor does it dispute the unambiguous terms of the Leases. Thus, the first element has been met.

#### 2. *Imaging's Performance*

■ Imaging's obligations under the Leases were to lease the computer imaging equipment to Graphic Arts. There is no dispute that Imaging did, in fact, purchase the equipment and lease it to Graphic Arts. (Affidavit of Steven E. Roland, ¶¶ 6, 17, 28.) Moreover, the terms of the Leases specifically disclaim any performance warranties regarding the equipment by Imaging:

> No representation or promise made by [Electronic] will be deemed made by or binding upon [Imaging]. **[Imaging] HAS NOT MADE AND DOES NOT NOW MAKE ANY REPRESENTATIONS OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, WITH RESPECT TO THE DESIGN, OPERATION, OR CONDITION OF THE EQUIPMENT OR ANY PART THEREOF, ITS MERCHANTABILITY, ITS FITNESS FOR A PARTICULAR PURPOSE,** ... Nothing herein contained will be construed as depriving [Graphic Arts] of any rights it may have against Electronic or any other person other than Lessor, including the benefit of any manufacturer's warranty on the Equipment.

(Imaging's 12(M), ¶ 11, and ¶ 2 of Exs. B, C, and D.)

Such conspicuous disclaimers of warranty clauses are valid and binding. *See In re O.P.M. Leasing Servs., Inc.,* 21 B.R. 993, 1008 (Bankr.S.D.N.Y.1982). Accordingly, Imaging has met all of its obligations to Graphic Arts.

### 3. *Graphic Arts' Breach of Contract*

■ Graphic Arts has admitted that it failed and refused to make all of the required payments under the Leases. (Graphic Arts 12(N), ¶¶ 16, 19, and 22.) Paragraph 9 of each lease provides that "[failure] to pay any installment of Rents or other required payment when due" is an event of default. (Imaging 12(M), Exs. B, C and D, ¶ 9.) The terms of the Leases also unambiguously provide that "[Graphic Arts] will not be entitled to any abatement or reduction of Rents for any reason. All rents and other amounts payable hereunder will always be payable as provided herein unless Lessee's obligations in respect thereof have been terminated pursuant to this Agreement." (Imaging 12(M), Exs. B, C, and D, ¶ 1.) Finally, the Leases provide that "[Graphic Arts'] obligations to pay all Rent and any other amounts is absolute and unconditional." (Imaging 12(M), Exs. B, C, and D, ¶ 19.) Graphic Arts has also admitted that it breached paragraph 1 of the Leases by failing to "pay on demand a late charge of 10% of each installment and other sums payable hereunder which remain overdue for more than 30 days." (Graphic Arts 12(N), ¶¶ 14, 17, 20, and 23.) Accordingly, Graphic Arts has breached the Leases by defaulting on rent payments, as well as late charges.

### 4. *Damages from Breach*

■ Graphic Arts admits that the terms of Lease 1 provide that it was obligated to pay to Imaging total rent of $131,845.68 in thirty-six monthly installments of $3,662.38. (Graphic Arts 12(N), ¶ 6.) Graphic Arts also admits that the terms of Lease 2 provide that it was obligated to pay to Imaging total rent of $86,136.60 in sixty monthly installments of $1,435.61. (Graphic Arts 12(N), ¶ 8.) Finally, Graphic Arts admits that the terms of Lease 3 provide that it was obligated to pay to

Imaging total rent of $35,110.74 in three monthly payments of $557.18 and thirty monthly payments of $1,114.64. (Graphic Arts 12(N), ¶ 10.)

Under paragraph 10 of the Leases, since Graphic Arts has defaulted by failing to pay its monthly rent, Imaging is entitled to payment of the unexpired remainder of the rent for the term of each lease. (Graphic Arts 12(N), ¶ 13.) Further, paragraph 10 requires Graphic Arts to pay for "all legal fees and other costs and expenses in connection with, or arising or resulting from any Event of Default or the exercise of Lessor's remedies. . . ." (Graphic Arts 12(N), ¶ 15.) Under paragraph 10, Imaging is also entitled to late charges equal to ten percent of each installment and other sums which remain overdue for more than thirty days. (Graphic Arts 12(N), ¶ 14.)

As a result of Graphics Arts' breaches, Imaging had been damaged in the amount of $107,768.87, as of March 31, 1996, not including interest, costs, and attorneys fees.

### D. Graphic Arts' Defense

In responding to a motion for summary judgment, the non-movant may submit affidavits and other evidence to show the existence of a genuine issue of material fact. FED. R. CIV. P. 56(d). In its Response to Plaintiff's Motion for Summary Judgment, Graphic Arts relies on four pieces of evidence: its own 12(N) statement; an Affidavit of Thomas Hoganson dated June 13, 1996; Electronic's Answers to Interrogatories; and Imaging's Answers to Interrogatories. These pieces of evidence, however, even when considered in a light most favorable to Graphic Arts, do not create a genuine issue of material fact as to Graphic Arts' breaches of the Leases.

The admissions contained within Graphic Arts' 12(N) statement are by far the most compelling evidence in favor of Imaging. Graphic Arts simply admits to every element necessary for Imaging to prove its case. Mr. Hoganson's Affidavit is replete with information and statements irrelevant to the breach of contract claim. As for the two sets of

answers to interrogatories, neither set provides any relevant information for this claim.

■ Graphic Arts also attempts to defend its actions by claiming unconscionability—to dispute the validity of the Leases. However, because Graphic Arts failed to raise this defense in its Answer or Amended Third Party Complaint, Graphic Arts has waived the defense of unconscionability. FED. R. CIV. P. 8. Moreover, even if Graphic Arts had timely raised its defense of unconscionability, that defense would have failed.

Graphic Arts relies upon *Fleischmann Distilling Corp. v. Distillers Co., Ltd.*, 395 F.Supp. 221 (S.D.N.Y.1975), for the proposition that "[s]ection 2–302 of the Uniform Commercial Code requires that a contract be rendered invalid as unconscionable, despite its apparent validity, when a close examination of its terms reveals a manifest unfairness." (Memorandum in Response to Plaintiff's Motion for Partial Summary Judgment, [Graphic Arts Resp.] at 4.)[4] Graphic Arts further argues that it had no bargaining power to vary any of the terms of the contracts. (Id.)

■ The issue of unconscionability is to be determined by the court as a matter of law. *American Dredging Co. v. Plaza Petroleum, Inc.*, 799 F.Supp. 1335, 1339 (E.D.N.Y.1992), *vacated in part*, 845 F.Supp. 91 (E.D.N.Y. 1993). Merely raising the issue of unconscionability "does not automatically defeat a motion for summary judgment." *Id.* The intent of the doctrine of unconscionability is to prevent " 'oppression and unfair surprise', but does not disturb the 'allocation of risks because of superior bargaining power.' " *In re Chateaugay Corp. v. Northern States Contracting Co., Inc.*, 162 B.R. 949, 959 (Bankr. S.D.N.Y.1994) (citing UCC § 2–302, Official Comment N.1). The doctrine of unconscionability is rarely applied in a commercial setting:

> When the contract is between two commercial entitles, unconscionability must be viewed 'in light of the general commercial background and the commercial needs of the particular trade or case,' and there is a presumption of conscionability when the contract is between businessmen in a commercial setting. Courts have rarely found a clause to be unconscionable in a commercial contract.

*American Dredging*, 799 F.Supp. at 1339; *accord Rubin v. Telemet Am., Inc.*, 698 F.Supp. 447, 450 (S.D.N.Y.1988).

Here, not only are the Leases between commercial entities, but Graphic Arts has failed to put forth any facts that even remotely suggest that, when it entered into the Leases, it was some sort of " 'commercially illiterate consumer beguiled into a grossly unfair bargain by a deceptive vendor or finance company.' " *In re Chateaugay Corp.*, 162 B.R. at 960.

In order to prove unconscionability, Graphic Arts must show " 'an absence of meaningful choice' " in the contract formation process and contract terms unreasonably favoring Imaging. *Master Lease Corp. v. Manhattan Limousine, Ltd.*, 177 A.D.2d 85, 88–89, 580 N.Y.S.2d 952 (1992). For example, unconscionability may include "high pressure commercial tactics, inequality of bargaining power, deceptive practices and language in the contract, and an imbalance in the understanding and acumen of the parties." *Master Lease*, 177 A.D.2d at 89, 580 N.Y.S.2d 952. Graphic Arts has failed to put forth sufficient facts to support its contention of unconscionability.

Graphic Arts makes the broad assertion that "there is virtually no bargaining power on the part of the Defendant to vary any terms of the contract. It either accepts the terms and conditions in the preprinted fine print of the contract forms, or goes elsewhere to purchase equipment." (Graphic Arts Resp., at 4.) However, Graphic Arts has failed to show that it had no bargaining power or was subject to either unfair pressure or deceptive sales practices. Nowhere does Graphic Arts state that it attempted to vary certain terms of the Leases, but was rebuffed. Nor does Graphic Arts show that

---

4. Additionally, it appears that Article 2 of the UCC is persuasive, but not controlling. The Leases are, instead, controlled by New York case- law, since UCC Article 2A—which concerns leases—was not effective in New York until June 30, 1995.

it could only purchase or lease the equipment through Imaging. Graphic Arts was free to pursue financing through any other commercial lender who may have offered more advantageous lease terms. In fact, there is not one scintilla of evidence to support Graphic Arts' alleged defense that it had no choice when it came to obtaining, and contracting for, the equipment. Moreover, Graphic Arts argues that Imaging and Electronic "exercise their superior marketing position to take advantage of the Defendant, by leasing non-performing equipment, of low value, for a very large sum of money." (Graphic Arts Resp., at 5.) In *Polygram, S.A. v. 32–03 Enterprises, Inc.*, 697 F.Supp. 132 (E.D.N.Y. 1988), the court rejected this very argument. In *Polygram*, a manufacturer and market of records, tapes, and compact discs moved for summary judgment against a distributor of those products for failing to pay for the merchandise that was delivered. *Id.* The defendant contended that the return policy for equipment, stated in the contract, was unconscionable. *Id.* The defendant argued that the plaintiff was a huge international corporation that pressured *small* distributors to agree to unfavorable terms in the contracts. *Id.*

· In granting summary judgment in favor of the plaintiff, the court stated:

> What defendant fails to indicate is that plaintiff is not the sole source of these products. Defendant is not forced to contract with plaintiff but does so voluntarily. As a private corporation defendant has the option of marketing plaintiff's products or dealing with several hundred other manufacturers of similar products.

*Polygram*, 697 F.Supp. at 137. The Court also stated that "[a] claim of superior bargaining power does not constitute unlawful coercion or duress." *Id.* Similarly, the mere fact that either Imaging or Electronic may have had superior bargaining power does not mean that Graphic Arts was forced to enter into the Leases.

Thus, even if, *arguendo*, Graphic Arts' defense of unconscionability had been timely made, it still failed to submit sufficient material facts to supports its defense that the Leases are unconscionable. Thus, the Court finds that the Leases are valid, and were breached by Graphic Arts.

### E. Conclusion Regarding Imaging's Motion

There has been no showing that a genuine issue of material fact exists as to Imaging's motion for summary judgment. The Leases were not unconscionable, and the four requisite elements for breach of contract have been met. Therefore, Imaging is entitled to summary judgment as a matter of law.

## II. Electronic's Motion for Summary Judgment

### A. Choice of Law

█ Initially, the Court must determine which state's law governs. All three of the Purchase Agreements entered into between Graphic Arts and Electronic contained identical terms and specifically state that "[t]his Agreement ... will be governed by the laws of Massachusetts." (Electronic's 12(M), Exs. 3, 5, and 6, ¶ 11.) As discussed above, the Seventh Circuit has noted that, under Illinois conflicts law, the express choice of law provision in a contract is usually enforced. *Vencor, Inc. v. Webb.*, 33 F.3d at 844. Here, there is no apparent reason to override the chosen law of the parties. Thus, Massachusetts law controls the substantive aspects of this dispute. However, because the statute of limitations issue is considered procedural by Illinois courts, the applicable statute of limitations must be determined under Illinois law. *Cox v. Kaufman*, 212 Ill.App.3d 1056, 156 Ill.Dec. 1031, 571 N.E.2d 1011, 1015, *appeal denied*, 141 Ill.2d 537, 162 Ill.Dec. 484, 580 N.E.2d 110 (1991).

### B. Statute of Limitations Defense [5]

█ A four year statute of limitations applies to Graphic Arts' claims of breach of warranty. As discussed earlier, Article 2 of the Illinois UCC applies to contracts for sale

---

5. As an initial matter, the Court notes that, in the Purchase Agreements, Electronic disclaimed any and all warranties.

of goods. *See supra*, n. 2. Therefore, the Purchase Agreements fall within the scope of Article 2. In its memorandum in support of its motion for summary judgment ("Electronic Mem. Supp." at 3), Electronic asserts that, pursuant to 810 ILCS 5/2–725 (1995), "a breach of warranty claim must be brought within four years after the cause of action accrues." Thus, Article 2's four year period of limitations applies to the Purchase Agreements in issue here. However, even if Article 2 did not apply to the Purchase Agreements, the four year statute of limitations under Illinois UCC Article 2A would apply.[6]

Electronic delivered the Colorgetter to Graphic Arts on February 21, 1991. (Electronic 12(M), ¶ 5.) It delivered the Workstation on April 5, 1991. (Electronic 12(M), ¶ 7.) Graphic Arts filed its original Third Party Complaint on October 25, 1995, and its Amended Third Party Complaint on December 6, 1995. (Electronic 12(M), ¶ 10.) To have complied with the statute of limitations, Graphic Arts would have had to file its lawsuit with respect to the Colorgetter no later than February 21, 1995, and filed any claims relating to the Workstation no later than April 5, 1995.[7]

Lastly, in its response brief, Graphic Arts unexpectedly declared that its claims are for indemnity, rather than for breach of warranty, and, therefore, sound in tort (making the UCC's statute of limitations inapplicable). Further, Graphic Arts claims that Illinois law allows for indemnity as a separate action entirely, with a statute of limitations that provides that an action for which indemnity is sought be brought within two years of service of process in the underlying claim.

Graphic Arts' last minute arguments fail for several reasons. First, Graphic Arts has not properly pled indemnity as a cause of action (and has most likely waive it). However, even if this action is not waived, Graphic Arts must properly raise it—such an action can not just be alleged in a response to a motion for summary judgment. Second, there remain serious issues as to which state's law—Massachusetts or Illinois—would even govern an indemnity action. The Purchase Agreements' choice of law provision might govern an indemnity action, however, no Massachusetts law has been cited or discussed by the parties. Finally, even if, arguendo, Graphic Arts had properly pled an indemnity cause of action, and it happened to be governed by Illinois law, it would still fail.

"Under the economic loss doctrine, purely economic losses are not recoverable under traditional tort theories." *Stepan Co. v. Winter Panel Corp.*, 948 F.Supp. 802, 807 (N.D.Ill.1996) (citing *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982)).

> Ever since the [Illinois Supreme Court] decided *Moorman*, it has been established law in Illinois that recovery for solely economic loss in relation to a product must be had within the framework of contract law. No action for solely economic loss in relation to a product may be had on theories of tort law, i.e. negligence or product liability.

*Seegers Grain Co., Inc. v. United States Steel Corp.*, 218 Ill.App.3d 357, 160 Ill.Dec. 793, 577 N.E.2d 1364, 1371 (citation omitted), *appeal denied*, 142 Ill.2d 665, 164 Ill.Dec. 928, 584 N.E.2d 140 (1991).

Economic losses include those which flow from the damages consequent to qualitative defects, including reduced value, return of purchase price, repair and replacement, and lost profits. *Moorman*, 61 Ill.Dec. 746, 435 N.E.2d at 450. The distinction between economic and non-economic losses is made based on the notable policy differences underlying

---

**6.** Article 2A became effective in Illinois on January 1, 1992. In Illinois, amendments to statutes of limitation are generally given retroactive effect. *Straub v. Zollar*, 278 Ill.App.3d 556, 215 Ill.Dec. 330, 663 N.E.2d 80, 84, *appeal denied*, 167 Ill.2d 570, 217 Ill.Dec. 670, 667 N.E.2d 1063, *cert. denied*, — U.S. ——, 117 S.Ct. 590, 136 L.Ed.2d 519 (1996). Thus, even if the Purchase Agreements are greater as leases, instead of contracts for the sale of goods, a four year statute of limitations applies. Under the Illinois UCC 2A, "[a]n action for default under a lease contract, including breach of warranty or indemnity, must be commenced within 4 years after the cause of action accrued." 810 ILCS 5/2A–506(1).

**7.** Graphic Arts made no mention of the HPG Upgrade Option in its Amended Third Party Complaint.

**330**

tort and contract causes of action. *Id.* When the losses suffered are economic in nature, the damage flows from the plaintiff's frustrated expectations about the quality and performance of the product. *Id.* "In actions to recover for solely economic loss, contract law and the UCC afford the parties their remedies and defenses." *Seegers Grain,* 160 Ill.Dec. 793, 577 N.E.2d at 1371.

In the instant case, Graphic Arts' claims are for purely economic damages. its Amended Third Party Complaint displays Graphic Arts' frustrated expectations about the quality and performance of the Workstation and Colorgetter. (Amended Third Party Complaint, Counts 1 & 2, ¶ 10.) As such, its claims sound solely in contract, and are, therefore, barred by the four year statute of limitations.

### C. Conclusion Regarding Electronic's Motion

There has been no showing that a genuine issue of material fact exists as to Electronic's motion for summary judgment. The Court finds that Graphic Arts' claims are time barred, and, therefore, Electronic is entitled to summary judgment as a matter of law.

### CONCLUSION

An examination of all of the evidence, even when taken in the light most favorable to Graphic Arts, does not show the existence of any genuine issues of material fact with respect to either motion for summary judgment.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Partial Summary Judgment be, and the same hereby is, **GRANTED.**

**IT IS ALSO ORDERED** that Third Party Defendant's Motion for Summary Judgment be, and the same hereby is, **GRANTED.**

**IT IS FURTHER ORDERED** that Graphic Arts shall pay Imaging $107,768.87 for past due payments and late charges. Imaging shall file, within twenty-one days from the date of this Memorandum Opinion and

Order, a verified petition of interest, costs, and attorneys fees.