MASTER LEASE CORPORATION, Respondent, v MANHATTAN LIM-
OUSINE, LTD., et al., Appellants.

Second Department, February 24, 1992

### APPEARANCES OF COUNSEL

*Edmund P. D'Elia, P. C. (Jamie K. Nicastri, Joseph P. De Carlo* and *Angela M. Greco* of counsel), for appellants.

*Hayt, Hayt & Landau (Aaron R. Cahn* of counsel), for respondent.

### OPINION OF THE COURT

MANGANO, P. J.

■ The main question to be resolved in this case is whether the disclaimer of warranties provision in the subject lease agreement is "unconscionable" pursuant to UCC 2-302. In our view, this question must be answered in the negative.

### I

The instant action arises out of a lease entered into in 1987 by the defendant Manhattan Limousine, Ltd. (hereinafter Manhattan), a private limousine business, and the plaintiff Master Lease Corporation (hereinafter Master), a finance company. In accordance with the parties' discussions, Master purchased a telephone equipment system, which had been manufactured by TIE Communications (hereinafter TIE), from the dealer, Pacesetter Telephone Company (hereinafter Pacesetter), and thereupon leased it to Manhattan for a five-year period. The lease contained a disclaimer of warranties provision.

Manhattan stopped making the rental payments after eight months on the ground that the system was, and had been

from its initial installation, inoperative, and unsuitable for use. Master commenced the instant action against Manhattan and the defendant Jeanne Schwartz, a guarantor of the lease, to recover the additional rent due. In their answer, and in papers submitted in opposition to the plaintiff's motion for summary judgment, the defendants alleged, *inter alia,* that (1) the system was inoperative and the disclaimer of warranties provision in the lease was "unconscionable", and (2) alternatively, no binding lease ever came into existence due to "a failure of an express condition precedent". The defendants also effectively interposed two counterclaims for damages: (1) for breach of warranty, to recover all monies paid to Master and "consequential damages", and (2) on the alternate ground that no lease ever came into existence, to recover all monies paid to Master.*

Master moved for summary judgment dismissing the affirmative defenses and counterclaims asserted by the defendants and for summary judgment in its favor on its complaint. The Supreme Court granted the plaintiff's motion only to the extent of dismissing the defendants' counterclaims. The instant appeal by the defendants ensued.

## II

Initially, we note that the Supreme Court incorrectly described the issue of unconscionability as a "factual issue". It is well settled that "[w]hether a contract or a clause thereof is unconscionable or not is for the court to decide * * * [and] if it appears from the record before the court that unconscionability may exist, and the issue is not free from doubt, then the court must hold a hearing where the parties may present evidence with regard to the circumstances of the signing of the contract, and the disputed terms' setting, purpose and effect" *(State of New York v Wolowitz,* 96 AD2d 47, 68-69).

In dismissing the defendants' counterclaims, the Supreme Court stated, *inter alia:* "an unconscionable agreement is merely unenforceable and does not give rise to a cause of action to a party who enters into such agreement". This determination by the Supreme Court is fundamentally flawed. If the disclaimer of warranties provision in the subject lease were to be held unconscionable by the court, as a matter of law, then the defendants' counterclaim against Master which

---

* The Supreme Court treated both "counterclaims" as "based upon the alleged breach of warranties".

seeks damages for breach of warranty, would be a viable one; under those circumstances, it would be the relevant statutory provisions *(see,* UCC 2-313, 2-314, 2-315, 2-714 [2]; 2-715; *see also, Carbo Indus. v Becker Chevrolet,* 112 AD2d 336, 340), rather than the doctrine of unconscionability, which would "give rise" to that counterclaim, and dismissal of that counterclaim prior to trial would be improper *(see, Industralease Automated & Scientific Equip. Corp. v R.M.E. Enters.,* 58 AD2d 482; *cf., Barco Auto Leasing Corp. v PSI Cosmetics,* 125 Misc 2d 68).

Nevertheless, it is our view that the dismissal of the defendants' counterclaim against Master which seeks damages for breach of warranty, must be affirmed, precisely because the disclaimer of warranties provision in the instant lease is not unconscionable, as a matter of law. It is to this issue that we now turn.

### III

Section 2-302 of the Uniform Commercial Code provides:

"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

"(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination".

The applicable principles governing the issue of unconscionability of contracts were set forth by the late Justice David T. Gibbons of this court in *State of New York v Wolowitz (supra,* at 67-68), wherein he stated:

" 'As a general proposition, unconscionability, a flexible doctrine with roots in equity * * * requires some showing of "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party" ' *(Matter of State of New York v Avco Fin. Serv.,* 50 NY2d 383, 389, *supra,* quoting from *Williams v Walker-Thomas Furniture Co.,* 350 F2d 445, 449). This definition reveals two major elements which have been labeled by commentators, procedural and substantive unconscionabil-

ity (see, e.g. Leff, Unconscionability and the Code—The Emperor's New Clause, 115 U Pa L Rev 485). The procedural element of unconscionability concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract, per se *(Industralease Automated & Scientific Equip. Corp. v R.M.E. Enterprises,* 58 AD2d 482, 489, n 4 [HOPKINS, J.]). Examples of the former include, but are certainly not limited to, high pressure commercial tactics, inequality of bargaining power, deceptive practices and language in the contract, and an imbalance in the understanding and acumen of the parties. Examples of unreasonably favorable contractual provisions are virtually limitless but include inflated prices, unfair termination clauses, unfair limitations on consequential damages and improper disclaimers of warranty *(Industralease Automated & Scientific Equip. Corp. v R.M.E. Enterprises, supra).*

"In determining the conscionability of a contract, no set weight is to be given any one factor; each case must be decided on its own facts *(Matter of Friedman,* 64 AD2d 70, 85). However, in general, it can be said that procedural and substantive unconscionability operate on a 'sliding scale'; the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa (Eddy, On the 'Essential' Purposes of Limited Remedies; The Metaphysics of UCC Section 2-719 [2], 65 Cal L Rev 28, 41-42, n 56). While there may be extreme cases where a contractual term is so outrageous and oppressive as to warrant a finding of unconscionability irrespective of the contract formation process (see, e.g., *Jones v Star Credit Corp.,* 59 Misc 2d 189, 192), such cases are the exception. Generally, there must be a showing of both a lack of a meaningful choice and the presence of contractual terms which unreasonably favor one party *(Matter of State of New York v Avco Fin. Serv., supra).* It should always be remembered in analyzing cases such as the one at bar that by definition '[a] lease agreement, like any other contract, essentially involves a bargained-for exchange between the parties. Absent some violation of law or transgression of a strong public policy, the parties to a contract are basically free to make whatever agreement they wish, no matter how unwise it might appear to a third party' *(Rowe v Great Atlantic & Pacific Tea Co.,* 46 NY2d 62, 67-68). The doctrine of unconscionability, with its emphasis on the contract-making process, is really an expression of, rather than an exception to, this principle. By focusing on the

manner in which a contract is entered into and the status of the parties, the doctrine is designed to insure freedom of contract and not to negate it."

Again, in *Gillman v Chase Manhattan Bank* (135 AD2d 488), this court stated: "the doctrine of unconscionability has little applicability in the commercial setting because it is presumed that businessmen deal at arm's length with relative equality of bargaining power * * * the doctrine is primarily a means with which to protect the 'commercially illiterate consumer beguiled into a grossly unfair bargain by a deceptive vendor or finance company' " *(Gillman v Chase Manhattan Bank, supra,* at 491, quoting *Equitable Lbr. Corp. v IPA Land Dev. Corp.,* 38 NY2d 516, 523).

The record herein indicates that Manhattan has been in the private livery limousine business for over 20 years, with more than 100 franchises. Moreover, the parties herein were not strangers, Manhattan having entered into a previous agreement in 1982 with Master for the lease of a telephone equipment system supplied by Pacesetter and manufactured by TIE. However, the defendants failed to demonstrate that there was an "interrelationship" *(ConTel Credit Corp. v Mr. Jay Appliances & TV,* 128 AD2d 668) between Master, Pacesetter, and TIE; thus, there is no evidence suggesting that the transaction was structured as a lease in order to insulate Pacesetter and TIE from damage claims based on breach of warranty *(cf., Tandy Computer Leasing v A.T.C. Control Serv.,* 139 Misc 2d 128; *Industralease Automated & Scientific Equip. Corp. v R.M.E. Enters., supra).* Indeed, the instant lease provided that Master assigned to Manhattan its right to pursue any warranty claims against the dealer and the manufacturer, so long as Manhattan made its rental payments to Master, which Manhattan did for eight months *(see, ConTel Credit Corp. v Mr. Jay Appliances & TV, supra).* In this regard, the facts of this case can be clearly contrasted with those present in *Universal Leasing Servs. v Flushing Hae Kwan Rest.* (169 AD2d 829). In that case, too, a lease of a telephone equipment system contained a disclaimer of warranties provision. This court upheld the Supreme Court's determination that the disclaimer of warranties provision therein was unconscionable. However, an examination of the record in that case indicates that (1) the lessee's principal was a Korean whose understanding of, and ability to speak, read, and write English, was far from fluent, (2) the lessee had no understanding of telephone equipment systems, and (3) there was an intimate

business relationship between the lessor and the vendor. These factors have not been demonstrated in this case *(see also, ConTel Credit Corp. v Mr. Jay Appliances & TV, supra).*

Under these circumstances, the disclaimer of warranties provision in the instant lease is not unconscionable, as a matter of law. Accordingly, the defendants' counterclaim against Master which seeks damages for breach of warranty, must be dismissed.

## IV

The Supreme Court also held in its decision that there was an "issue of fact" as to whether "a condition precedent existed to the formation of the contract between the parties which failed to occur". The Supreme Court based that holding on Manhattan's argument that (1) it executed a "conditional" Delivery and Acceptance Receipt for the equipment on April 29, 1987, (2) it received a letter from Pacesetter's president, Mr. Arthur Gerofsky, dated April 29, 1987, providing for the proper installation by Pacesetter of an "Automatic Call Sequencer" within 30 days (i.e., the alleged condition precedent) to correct the system's problem, which was allegedly never done, and (3) it sent a letter dated April 29, 1987, to Master, stating: "This is to confirm that the new TIE System is not functioning and is inoperable. Enclosed is a copy of a conditional Delivery and Acceptance with attached letter of Mr. Gerofsky dated April 29th, 1987 stating 'installation will start within 30 days' ".

■ We disagree with the Supreme Court. The Delivery and Acceptance Receipt which was executed by Manhattan, is not marked "conditional", and provides that the equipment "is, therefore unconditionally accepted for purposes of the lease. Lessee authorizes Master * * * to pay the vendor for the equipment". Moreover, the lease specifically provides that the "Lessee's execution of the Delivery and Acceptance Receipt shall conclusively establish that the equipment covered thereby is acceptable to Lessee for purposes of the Lease". Finally, both the lease and the Delivery and Acceptance Receipt clearly disclaim all warranties, advise Manhattan that its sole remedy is against the dealer and the manufacturer, and explicitly provide that all lease payments must be paid to Master. The letter of Pacesetter to Manhattan, and the self-serving letter of Manhattan to Master, do not alter the fact that a valid lease was entered into by Manhattan and Master.

Accordingly, the defendants' counterclaim against Master which seeks the return of money paid by Manhattan to Master based on a theory that the lease never came into existence must be rejected.

In view of the foregoing, the order is affirmed insofar as appealed from.

SULLIVAN, BALLETTA and RITTER, JJ., concur.

Ordered that the order is affirmed insofar as appealed from, without costs or disbursements.