**M & T MORTGAGE CORPORATION,**
Plaintiff,

v.

Cedric D. MILLER and Elizabeth Miller, New York City Health & Hospitals Corporation, City of New York Department of Transportation, Parking Violation Bureau, New York City Transit Adjudication Bureau, New York City Department of Environmental Control, People of the State of New York, New York City Bureau of Highway Operations, New York City Department of Taxation and Finance, Taxi and Limousine Commission, "John Doe" and "Mary Roe," Defendants,

Cedric D. Miller and Elizabeth Miller, Third–Party Plaintiffs,

v.

United States Department of Housing and Urban Development, Ackerman, Raphan & Sultzer, Neal Sultzer, Better Homes Depot, Inc., Eric Fessler, President of Better Homes Depot, Inc., John Glenn, Real Estate Broker Employed by Better Homes Depot, Inc., Madison Home Equities Inc., Nadine Malone, President of Madison Home Equities, Inc., Michael Rindenow, Marc Oringer, Alton Brown, C. Peter David, CLA, Inc., Robert Dosch, A.V.P. Exterminators, Inc., Verrazano Associates Ltd., and Fidelity National Title Insurance Company, Third–Party Defendants.

No. 02 CV 5410.

United States District Court, E.D. New York.

June 28, 2004.

Evelyn H. Seeler, Buchanan Ingersoll, P.C., New York City, for Plaintiff.

Hillary Exter, Brooklyn Legal Services Corp., Brooklyn, NY, for Defendants/Third–Party Plaintiffs.

Carolyn Lisa Miller, United States Attorney's Office, Brooklyn, NY, Scott E. Kossove, L'Abbate, Balkan, Colavita & Contin, Garden City, NY, Anthony J. Genovesi, Jr., Borchert, Genovesi, LaSpina & Landicino, P.C., Brooklyn, NY, Anthony Wayne Vaughn, Borchert, Genovesi, Laspina & Landicino, Whitestone Expressway, NY, Andrew M. Lauri, Carle Place, NY, Alan J. Firestone, Firestone & Harris, Brooklyn, NY, Bill Tsevis, Solomon & Siris, LLP, Garden City, NY, for Third–Party Defendants.

### OPINION ORDER

GERSHON, District Judge.

Plaintiff, M & T Mortgage Corporation ("M & T"), commenced this action against defendant/third-party plaintiffs Cedric and Elizabeth Miller (the "Millers"), seeking to foreclose on a mortgage loan made by third-party defendant, Madison Home Equities, Inc., which had been sold to M & T. The Millers answered and asserted affirmative defenses and third-party complaint against third-party defendants Madison Home Equities, Nadine Malone and Michael Rindenow (collectively the "Madison Defendants"); Better Homes Depot, Inc., Eric Fessler, President of Better Homes

Depot, Inc., and Glenn John, individually and in his capacity as a real estate broker employed by Better · Homes (collectively the "Better Homes Defendants"); Neal Sultzer and the law firm Ackerman, Raphan & Sultzer (collectively the "Sultzer Defendants"); Marc Oringer, A.V.P. Exterminators, Inc., Verrazano Associates Ltd., Fidelity National Title Insurance Company, Alton Brown, C. Peter David, CLA, Inc., and Robert Dosch (together with the Madison Defendants, the Better Homes Defendants and the Sultzer Defendants the "Private Defendants"). On February 20, 2003, the Millers filed an "Answer and Amended Third Party Complaint." The Millers raise, as affirmative defenses, provisions of the Equal Credit Opportunity Act ("ECOA"),15 U.S.C. § 1691 *et seq.*, the Fair Housing Act ("FHA"), 42 U.S.C. § 3605, and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* They also bring claims against Third–Party Defendants of: · (1) conspiracy to commit fraud; (2) fraud · in the inducement; (3) rescission; (4) violations of the New York Deceptive Practices Act, General · Business Law ("GBL") § 349, (5) breach of fiduciary duty; (6) malpractice; (7) conversion; and (8) unconscionability. The Millers also seek a declaratory judgment against the United States Department of Housing and Urban Development ("HUD"), pursuant , to the Declaratory Judgment Act ("DJA"), 28 U.S.C §§ 2201–2202, on the ground that HUD negligently performed its duties under the National Housing Act, 12 U.S.C. § 1708, and an injunction preventing the further issuance of FHA insurance on certain classes of homes except where HUD has performed due diligence regarding the terms of the sale and financing. ·

The claims against A.V.P. Exterminators, Inc. were settled by stipulation dated April 8, 2003. The Millers have represented that the claims against Third–Party Defendants Verrazano Associates Ltd., Fidelity National Title Insurance Company, and the United States Department of Housing and Urban Development have been settled. The Millers have also represented that M & T's claims against them have been settled.

The remaining Private Defendants jointly move to dismiss the Third–Party Complaint or in the alternative for summary judgment pursuant to Federal Rules of Civil Procedure 12(b)(6) or 56 on the grounds that: (1) the TILA, ECOA, FHA and GBL § 349 claims are barred by the statute of limitations; (2) the Millers have failed to state a claim of unconscionability; (3) the fraud claims are not permissible in a breach of contract case, are barred by the merger doctrine, and are not pled with sufficient particularity; and (4) the fraud, GBL § 349 and FHA claims are barred by the Millers' election of remedies.

### Statement of Facts

The Millers allege the following facts in the Third–Party Complaint:

Private Defendants are engaged in a scheme to fraudulently lend money and sell houses at inflated prices to low or moderate-income racial minorities, particularly African–American and Hispanic persons. Private Defendants target members of these groups because their relative inexperience in property ownership prevents them from identifying fraudulent or predatory sales and lending. The Millers are a middle-income minority family, and the house that is the subject of this action is located within an area identified by HUD as having the highest occurrence of predatory lending practices in the nation. HUD has made a finding that the Millers were the victims of a predatory lending scheme.

In December of 1998 the Millers contacted defendant Better Homes to discuss the possibility of buying a home. The

Millers expressed their concern to Glenn John, a Better Homes broker, that, because they were first-time purchasers, they did not know if they could afford to purchase a home. John informed the Millers that they would have to undergo a screening process to determine if they could afford a house and what type of house was most suitable for them. In fact, the true purpose of this process was to establish a "profile" that would confirm that the Millers were likely targets for a fraudulent buying and lending scheme.

John showed the Millers a house located at 1333 East 49th Street, Brooklyn, New York, with a purchase price of $229,000, which John assured them that they could afford. John also promised the Millers that he would arrange for a lender, Madison, to finance the purchase and obtain FHA mortgage insurance. John did not inform the Millers that the seller, Marc Oringer, a real estate speculator with a business relationship with Better Homes, had recently purchased the home for $164,000 in substantially the same condition as he was then selling it. It is unclear as to whether a contract of sale was ever entered into for this property.

The closing on the 49th Street house was scheduled for March 27, 1999. When the Millers appeared for the closing, they were informed that they could not afford the home, but that there was another, slightly cheaper property located at 1230 Troy Avenue, Brooklyn, that was within their price range. As evidenced by their immediate default on the Troy Avenue property, the Millers could not afford either property. In essence, Private Defendants used the Millers' bid as a price floor and continued to shop the 49th Street property. Once a higher bidder was procured, Private Defendants told the Millers that they could not afford the 49th Street property and steered them to the Troy

Avenue property. This property, with a sale price of $219,000 was also owned by Oringer, who had purchased it for $135,000 six weeks earlier. To convince the Millers to buy the Troy Avenue property, Better Home Defendants told the Millers that: the purchase price was fair and affordable; there was a rental unit in the property that would generate at least $1,200 a month; all repairs would be completed prior to their move in; all aspects of the transaction were being handled to protect their interests; and that it was the altruistic mission of John to assist people of color in achieving the American dream of home ownership. Unfortunately, none of these statements proved true.

In furtherance of this fraud, Better Home Defendants obtained a fraudulent appraisal from Third–Party Defendant, CLA, Inc. The appraisal was based upon the inspection of Third–Party Defendants A.V.P. Exterminators and Robert Dosch, who has since been charged by the New York County District Attorney with defrauding HUD and the FHA program in connection with asset flipping. The fair market value of the 1230 Troy Avenue property appears to have been, at most, $150,000. (Exhibit B to Exeter Declaration). The appraisal, however, provided by CLA and Dosch places the property value at the exact sale price of $219,000; fails to note the purchase of the house by Oringer for $135,000 six weeks earlier; misrepresents what types of properties were comparable to the subject property; conceals the condition of the property, the repairs needed and the status of the certificate of occupancy. (Exhibit D to Exeter Declaration). The appraisal also omits that, prior to the Millers entering into the contract for sale, another party had agreed to buy the home for $20,000 less, and that the contract of sale was with Better Homes, not Oringer the deed holder, and was not labeled as a "flip" transaction.

Having convinced the Millers to purchase the Troy Avenue property, Better Homes instructed the Millers to use Madison to acquire the necessary financing. Fessler, the president of Better Homes, was familiar with Madison, having purchased Better Homes from Nadine Malone, the president of Madison. Madison, as a result of allegations that are identical to those at issue in this case, namely its use of false documentation and failure to adhere to appropriate credit or appraisal requirements in connection with applications for FHA insurance, has been sanctioned, civilly fined· and ultimately barred from participating in the FHA mortgage insurance program. Neither this relationship nor Madison's history of fraudulent conduct was disclosed to the Millers.. At the request of Rindenow and Malone, the Millers gave an accurate oral statement of their then-current financial status, but signed a *blank* application after being told that the information they provided would be transferred ·onto the application by Madison's employees. Obtaining FHA mortgage insurance was a necessary part of Private Defendants' scheme, and, knowing that the Millers would not qualify for this insurance, Private Defendants deceived HUD and the FHA into believing that the Millers were capable of paying the mortgage by inflating the Millers' income level on the application.

Obtaining FHA mortgage insurance served several purposes for Private Defendants. First, it allowed · Private Defendants to sell the loan to a bulk purchaser, like M & T Mortgage. Second, if they retained the loan, the FHA guaranteed payment in the likely event of a borrower default. Finally, and perhaps most importantly, Private Defendants used FHA's issuance of mortgage insurance to further deceive the Millers into believing that the purchase price was fair and that the entire transaction was legitimate.

· The closing on the Troy Avenue property was held on March 30, 1999, less than two business days after the Millers first saw the property. Defendant, attorney C. Peter David, to whom the Millers were directed by the Better Home and Madison Defendants, purported to represent the Millers at the closing. However, David did not explain the significance of the documents that were being signed by the Millers and, as evidenced by the highly abbreviated closing period, did no independent diligence of his own. Better Homes and Madison were represented at the closing by the Sultzer Defendants. The Sultzer Defendants allowed the fraudulent transaction to proceed, despite agreeing, as part of the sanction against Madison, not to participate for a year in any loan transaction involving HUD.

Oringer, the title holder, did not appear at the closing nor did an attorney appear on his behalf. He is not the named seller in the contract of sale; no power of attorney was ever provided to the title company to act on Oringer's behalf; and no contract exists between Oringer and Better Homes. Nevertheless, title was passed from Oringer to the Millers. Accordingly, it appears that Oringer was functioning as a "straw man" for Better Homes, in that he was purchasing houses on behalf of Better Homes which then resold them. This effectively disguised the fact that Better Homes was engaging in flipping houses, as Better Homes does not appear in the chain of title.

### Private Defendants' Motion to Dismiss or for Summary Judgment

Private Defendants jointly move for dismissal or in the alternative summary judgment pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56 on the grounds that: (1) the TILA, ECOA, FHA and GBL § 349 claims are barred by the statute of

limitations; (2) the Millers have failed to state a claim of unconscionability; (3) the fraud claims are not permissible in a breach of contract case, are barred by the merger doctrine, and are not plead with sufficient particularity; and (4) the fraud, GBL § 349 and FHA claims are barred by the Millers' election of remedies.

### Claims Under TILA, ECOA, FHA and GBL § 349 Deceptive Practices Act

With respect to Private Defendants' arguments regarding the TILA, ECOA and FHA claims, plaintiff correctly states that these claims were asserted as affirmative defenses to the original action and not as separate claims against Private Defendants. Accordingly, Private Defendants' motion with respect to the TILA, ECOA, and FHA claims is denied.

■ Private Defendants also argue that the Millers' GBL § 349 Deceptive Practices Act claim is barred by the statute of limitations. While claims under the Deceptive Practices Act are governed by a three-year statute of limitation, *see Gaidon v. Guardian Life Insurance Company of America*, 96 N.Y.2d 201, 208, 727 N.Y.S.2d 30, 750 N.E.2d 1078 (2001), equitable tolling is available in cases of fraudulent concealment, *see Weil v. Long Island Savings Bank, FSB*, 77 F.Supp.2d 313, 324 (E.D.N.Y.1999). Nothing in the Third–Party Complaint precludes the Millers from developing facts showing a basis for fraudulent concealment and therefore for equitable tolling. *See Rodriguez v. Village of Island Park, Inc.*, 1991 WL 128568 * 9–10 (E.D.N.Y.1991)(setting forth conditions upon which fraudulent concealment can be used for equitable tolling).

### Fraud, Conspiracy to Commit Fraud and Aiding and Abetting

Private Defendants contend that the Millers' claims for fraud, conspiracy to commit or aiding and abetting a fraud should be dismissed: (1) as not cognizable in a breach of contract case and as barred by the merger doctrine; (2) for failing to state a claim under Federal Rule of Civil Procedure 12(b); and (3) for failing to plead fraud with adequate specificity under Federal Rule of Civil Procedure 9.

■ Private Defendants' assertions that the Millers' fraud claims are not cognizable in a contract case and are barred by the merger doctrine are meritless. While Private Defendants are correct that no claim exists to recover damages for fraud where the only fraud is that one party never intended to comply with the terms of the contract, *see Bridgestone/Firestone Inc., v. Recovery Credit Services, Inc.*, 98 F.3d 13, 20 (2d Cir.1996), a fraud claim is sustainable where the decision by one party to enter into the contract itself was induced by fraud. *Stewart v. Jackson & Nash*, 976 F.2d 86, 89 (2d Cir.1992). Here, the Millers claim a collateral fraud (*i.e.* a fraud not constituting an element of the contract) in that they allege that Private Defendants induced their entry into the contract by misrepresenting the value and condition of the property and the Millers' ability to pay the mortgage and by steering them to a corrupt attorney. Private Defendants' assertion that the merger doctrine defeats the Millers' fraud claim is also incorrect. Put simply, a claim for fraud in the inducement cannot be defeated through the use of a merger clause. *Greenfield v. Shapiro*, 106 F.Supp.2d 535, 539 (S.D.N.Y.2000); *Jackson v. State*, 210 A.D. 115, 205 N.Y.S. 658 (4th Dep't 1924), *aff'd* 241 N.Y. 563, 150 N.E. 556 (1925) ("A party to contract cannot, by misrepresentation of a material fact, induce the other party to enter into it to his damage and then protect himself from the legal effect of such misrepresentation by inserting in the contract a clause to the effect that he is not to be held liable

for the misrepresentation which induced the other party to enter into the contract.") Accordingly, Private Defendants' motion to dismiss the Millers' fraud claims on these grounds is denied.

Private Defendants also move to dismiss the Millers' fraud claims on the ground that they fail to state a claim. In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept all of plaintiffs' allegations as true and dismiss the complaint only if "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim[s] which would entitle [them] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Based upon the Third–Party Complaint, I cannot conclude at this early stage in the proceedings that the Millers can prove no set of facts that would entitle them to relief. On the contrary, the facts alleged, if proved, would establish a nefarious scheme to defraud innocent victims of their limited assets. Private Defendants' motions to dismiss pursuant to Rule 12(b)(6) are therefore denied.

■ Turning to Private Defendants' Rule 9(b) argument, that Rule is intended to provide a defendant with fair notice as to a plaintiff's claim of fraud, to safeguard a defendant's reputation, and to protect a defendant from a strike suit. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir.1994). A complaint of fraud satisfies Rule 9(b) if it sets forth who made the fraudulent statements, the dates and places at which the alleged fraudulent statements were made, the manner in which the statements were false and upon which statements plaintiffs relied. *Acito v. IMCERA Group Inc.*, 47 F.3d 47, 52 (2d Cir.1995). Plaintiffs need not, at this stage, plead scienter with great specificity, *Cohen*, 25 F.3d 1168, 1173; and conclusory allegations of scienter are adequate where

a complaint provides a minimal factual basis that gives rise to a strong inference of fraudulent intent. *Banks v. Consumer Home Mortgage, Inc.*, 2003 WL 21251584 (E.D.N.Y.2003). This "strong inference" may be demonstrated by showing that defendants had a motive and opportunity to commit fraud or strong circumstantial evidence of conscious misbehavior. *Shields*, 25 F.3d at 1128. When assessing the specificity of a fraud complaint, the reviewing court should read the complaint liberally, drawing all inferences in favor of the non-moving party. *Cosmas v. Hassett*, 886 F.2d 8 (2d Cir.1989).

■ The well-pled, forty-page Third–Party Complaint details the allegedly fraudulent behavior of each of the defendants as to how and when the fraud was perpetrated, what each defendants' role in the fraud was, and how the Millers relied upon their representations. Scienter has been demonstrated through a showing of both motive and opportunity and facts supporting a strong inference of fraudulent intent. There is no question that the Third–Party Complaint has made Private Defendants adequately aware of the charges against them. Accordingly, Private Defendants' motion to dismiss for failure to comply with Rule 9(b) is denied.

### Unconscionability

■ Private Defendants move to dismiss the Millers' unconscionability claim on the ground that the contract was a bargained-for exchange lacking either procedural or substantive unconscionability. To demonstrate unconscionability, the Millers must show an "absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Desiderio v. National Association of Securities Dealers*, 191 F.3d 198, 207 (2d Cir.1999), *cert. denied*, 531 U.S. 1069, 121

S.Ct. 756, 148 L.Ed.2d 659 (2001). These two elements, both of which are required to prove unconscionability, are commonly referred to as procedural and substantive unconscionability. *McNally Wellman Co., a Div. of Boliden Allis, Inc. v. New York State Elec. & Gas Corp.*, 63 F.3d 1188, 1197–98 (2nd Cir.1995).

A contract is procedurally unconscionable where the contract formation process is tainted by fraud or misrepresentation, *Price Bros. Co. v. Olin Const. Co., Inc.*, 528 F.Supp. 716, 720 (W.D.N.Y.1981), and can be demonstrated through a showing of, among other things, "high pressure commercial tactics, inequality of bargaining power, deceptive practices and language in the contract, and an imbalance in the understanding and acumen of the parties." *Master Lease Corp. v. Manhattan Limousine, Ltd.*, 177 A.D.2d 85, 89, 580 N.Y.S.2d 952 (2d Dep't 1992). Here, Private Defendants actively sought out buyers like the Millers who lacked business experience and then effectively prevented the Millers from avoiding harm through the use of competent counsel or an independent lender. Additionally, the highly abbreviated, two-day contract period constitutes both a high pressure sales tactic and an effective means to prevent the Millers from discovering their financial peril.

A contract is substantively unconscionable where its terms are unreasonably favorable to the party against whom unconscionability is claimed. *Brennan v. Bally Total Fitness*, 198 F.Supp.2d 377, 382 (S.D.N.Y.2002). Here, the Millers paid a sales price that represented a 60% premium over Private Defendants' purchase price, which Private Defendants knew (as demonstrated by their misrepresentations in the mortgage insurance application) the Millers could not afford and which the Millers immediately defaulted on. While a contract is not rendered un-

conscionable merely because one party made a poor business decision, where, as here, that decision was induced through fraud that effectively limited, if not eliminated, the aggrieved parties' ability to make an informed decision, a claim of unconscionability is proper. This variety of manipulative business practice is not validated because the abused party had a fleeting opportunity to avoid a contractual predator.

### Election of Remedies

Private Defendants assert that, having successfully settled the suit brought against them by plaintiff M & T, the Millers are foreclosed from pursuing a claim for damages against them. This contention is meritless.

### Conclusion

For the reasons stated above, Private Defendants' motions for dismissal are denied. Private Defendants' alternative requests for summary judgment are also denied, as the Millers have demonstrated issues of fact as to each of their claims. This case is referred to Magistrate Judge Go to supervise settlement discussions and, if necessary, the preparation of a joint pretrial order.

**SO ORDERED.**