■ SIMAR HOLDING CORP., Plaintiff, v GSC et al., Defendants/Third-Party Plaintiffs-Respondents. BROOKLYN HEIGHTS MANAGEMENT, INC., et al., Third-Party Defendants-Appellants. [928 NYS2d 592]—

In August 2003, the defendant/third-party plaintiff GSC owned certain real property in the Brooklyn Heights section of Brooklyn, upon which a five-story brownstone building was situated. The defendant/third-party plaintiff Jane Doe was the sole owner of GSC at that time and lived in one of the individual residential units in the building. Due to unpaid taxes on the real property, a tax lien had been imposed and a foreclosure sale had been scheduled. On September 15, 2003, Jane Doe, on behalf of GSC, entered into a contract for the sale of the property (hereinafter the contract) with the third-party defendant Brooklyn Heights Management, Inc. (hereinafter BHM), by its principal, Kobe Manor. The contract provided, among other things, that the purchase price would be $401,500, with an additional $25,000 to be paid on the condition that Jane Doe vacated the premises prior to December 1, 2003. The contract further provided that the purchase price was to be reduced by the undetermined amount required by BHM to satisfy the

outstanding tax obligations on the property. Approximately one month later, on October 22, 2003, Jane Doe, on behalf of GSC, allegedly entered into another contract for the sale of the same property (hereinafter the second contract), this time with the plaintiff Simar Holding Corp.

Simar Holding Corp. commenced an action against GSC, inter alia, for specific performance of the second contract. BHM, through the third-party defendant New Horizon Equities Corp., allegedly paid the sum of $120,000 to Simar Holding Corp. to discontinue its action against GSC, and the action was discontinued by order of the Supreme Court dated May 5, 2009. Prior to the discontinuance of the action, GSC and Jane Doe (hereinafter together the third-party plaintiffs) commenced a third-party action against BHM, New Horizons Equities Corp., and Manor (hereinafter collectively the third-party defendants) seeking, among other things, to rescind the contract on the ground of unconscionability. The third-party defendants counterclaimed, inter alia, for specific performance of the contract and to recover damages for breach of contract.

The third-party defendants appeal from so much an order dated May 10, 2010, as granted, in effect, that branch of the cross motion of the third-party plaintiffs which was for summary judgment on the first cause of action in the third-party complaint to rescind the contract on the ground of unconscionability. We reverse the order insofar as appealed from.

"In general, an unconscionable contract has been defined as one which is so grossly unreasonable as to be unenforcible because of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party" (*King v Fox*, 7 NY3d 181, 191 [2006]; *see Gillman v Chase Manhattan Bank*, 73 NY2d 1, 10 [1988]). "This definition reveals two major elements which have been labeled by commentators, procedural and substantive unconscionability" (*State of New York v Wolowitz*, 96 AD2d 47, 67 [1983]; *see Carvel Corp. v Rait*, 117 AD2d 485, 490-491 [1986]). "The procedural element of unconscionability concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract, per se" (*State of New York v Wolowitz*, 96 AD2d at 67; *see Lawrence v Graubard Miller*, 11 NY3d 588, 595 [2008]; *Gillman v Chase Manhattan Bank*, 73 NY2d at 10-11). Examples of procedural unconscionability "include, but are certainly not limited to, high pressure commercial tactics, inequality of bargaining power, deceptive practices and language in the contract, and an imbalance in the understanding and acumen of

the parties" (*State of New York v Wolowitz*, 96 AD2d at 67). "Examples of unreasonably favorable contractual provisions are virtually limitless but include inflated prices, unfair termination clauses, unfair limitations on consequential damages and improper disclaimers of warranty" (*id.* at 67-68).

"A determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made" (*Gillman v Chase Manhattan Bank*, 73 NY2d at 10; *see Gendot Assoc., Inc. v Kaufold*, 56 AD3d 421, 423 [2008]). However, "procedural and substantive unconscionability operate on a 'sliding scale'; the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa" (*State of New York v Wolowitz*, 96 AD2d at 68; *see Master Lease Corp. v Manhattan Limousine*, 177 AD2d 85, 89 [1992]). "The determination of unconscionability is a matter of law for the court to decide" (*Industralease Automated & Scientific Equip. Corp. v R. M. E. Enters.*, 58 AD2d 482, 488 [1977]; *see Laidlaw Transp. v Helena Chem. Co.*, 255 AD2d 869, 870 [1998]; *Master Lease Corp. v Manhattan Limousine*, 177 AD2d at 87; *State of New York v Wolowitz*, 96 AD2d at 68). "Where there is doubt . . . as to whether a contract is fraught with elements of unconscionability, there must be a hearing where the parties have an opportunity to present evidence with regard to the circumstances of the signing of the contract, and the disputed terms' setting, purpose and effect" (*Davidovits v De Jesus Realty Corp.*, 100 AD2d 924, 925 [1984]; *see Master Lease Corp. v Manhattan Limousine*, 177 AD2d at 87; *State of New York v Wolowitz*, 96 AD2d at 68-69). However, "[w]here the significant facts germane to the unconscionability issue are essentially undisputed, the court may determine the issue without a hearing" (*Scott v Palermo*, 233 AD2d 869, 870 [1996]). Thus, on a motion for summary judgment, "[t]he question . . . then is whether the record presents an issue as to the existence of unconscionability which should not be resolved without a hearing" (*State of New York v Wolowitz*, 96 AD2d at 69).

Contrary to the Supreme Court's determination, the third-party plaintiffs failed to demonstrate that, at the time of the signing of the contract, Jane Doe suffered from psychiatric disorders such that Manor's position as a real estate entrepreneur created an "imbalance in the understanding and acumen of the parties" (*id.* at 67). Moreover, a hearing was necessary to determine whether the procedures employed by Manor in soliciting the sale of the property, along with Jane Doe's lack of legal representation throughout the negotiating process (*see Pippis v*

*Pippis*, 69 AD3d 824 [2010]; *Rivera v Vickers*, 72 AD2d 807 [1979]; *Matter of Friedman*, 64 AD2d 70, 86-87 [1978]), served to deprive her of a "meaningful choice" in entering into the contract (*State of New York v Wolowitz*, 96 AD2d at 67). Furthermore, on the issue of substantive unconscionability, the third-party plaintiffs failed to prove the purchase price for the property, since the documents submitted in support of, in effect, the cross motion for summary judgment did not establish the amount owed on the tax lien. Moreover, as there was a dispute as to the appraised value of the property, a hearing was necessary to determine if the purchase price was unconscionably low. Accordingly, the Supreme Court erred in granting, in effect, that branch of the third-party plaintiffs' cross motion which was for summary judgment on the first cause of action in the third-party complaint to rescind the contract on the ground of unconscionability since the third-party plaintiffs did not establish their entitlement to judgment as a matter of law. Rivera, J.P., Florio, Austin and Cohen, JJ., concur.